UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL S. DANIELS, et al.,<br>Plaintiffs,<br>v.<br>ALAMEDA COUNTY, et al.,<br>Defendants. | Case No.19-cv-00602-JSC<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**<br>Re: Dkt. No. 15 |

Paul Daniels and Nanette Dillard allege that they were prosecuted by the Alameda County District Attorneys' Office in retaliation for exercising their First Amendment rights. Defendants move to dismiss all of Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6) and to strike the state law claims under California Code of Civil Procedure § 425.16, the anti-Strategic Lawsuits Against Public Participation (anti-SLAPP) statute.[1] (Dkt. No. 15.) After carefully considering the parties' submissions, including their post-hearing submissions, and having had the benefit of oral argument on June 13, 2019, Defendants' motion to dismiss Plaintiffs' Section 1983 claim is GRANTED with leave to amend and the motion to dismiss Plaintiffs' state law claims is denied without prejudice. The Section 1983 claim must be dismissed because Plaintiffs have not plausibly alleged that each defendant caused Plaintiffs' prosecution; nor have they plausibly alleged an absence of probable cause. The Court declines to address the state law claims until it determines if the federal claim will proceed past the pleading stage.

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 7 & 9.)

**BACKGROUND**

**A. Complaint Allegations[2]**

Nanette Dillard was the Executive Director of Alameda County's Associated Community Action Program ("ACAP"). (Complaint at ¶ 7.) ACAP was a "quasi-governmental Joint Powers Agency in Alameda County." (*Id.* at ¶ 5.) During the summer of 2005, Ms. Dillard and Paul Daniels, who worked for ACAP as the Community Services Block Grant Manager, fell in love. (*Id.* at ¶ 7.) The couple married two years later in 2007. (*Id.*)

In 2010, Ms. Dillard discovered that $159,000 which should have been held in the Alameda County Treasury for ACAP was missing. (*Id*. at ¶ 8.) Ms. Dillard raised this issue at a January 19, 2011 meeting with Alameda County Board of Supervisors President Nate Smiley, who was also a member of the ACAP Governing Board. (*Id.*) Although Ms. Dillard requested Mr. Smiley's assistance in tracing the missing funds, they were never accounted for and Ms. Dillard now believes that Supervisor Miley and Scott Haggerty, who was on the Alameda County Board of Supervisors, caused them to be transferred. (*Id.*)

At the January 19, 2011 meeting Ms. Dillard also raised concerns regarding the financial services Alameda County provided to ACAP under the joint powers agreement. (*Id*. at ¶ 9.) Ms. Dillard requested that ACAP be allowed to go forward as an independent 501(c)(3) non-profit organization and allowed to "operate outside of political motivation." (*Id*.) This change did not happen, and instead, Plaintiff was placed on administrative leave following a February 2, 2011 emergency closed door session of the ACAP Board of Governors. (*Id*. at ¶ 11.) Ms. Dillard and Mr. Daniels were both subsequently removed from their positions with ACAP. (*Id*. at ¶ 12.)

The County thereafter shut down ACAP and "cannibalized its grants to benefit the pet pork barrel projects of certain supervisors including Supervisor Miley." (*Id*. at ¶ 12.) The County then attempted to interfere with Ms. Dillard and Mr. Daniels' unemployment benefits by suggesting that they had been terminated for cause. (*Id*.) Ms. Dillard sued the ACAP Governing Board including Mr. Miley, Mr. Haggerty, Mr. Lieber, and Ms. Souza for violation of her rights under

---

[2] Because the Court only relies on the facts as alleged in the Complaint, Plaintiffs' request to strike portions of Defendants' brief summarizing the facts is denied as moot.

California's Brown Act based on their actions at the February 2, 2011 meeting and her termination. (*Id*. at ¶ 13.) The County ultimately agreed to settle the suit for more than $300,000. (*Id*.)

As soon as the settlement was reached, "County officials immediately demanded that Dillard return the settlement money paid, based on a bogus theory that Dillard was liable for certain ACAP indebtedness to the federal government." (*Id*. at ¶ 14.) However, this "indebtedness was a consequence of the County Political Defendants' own actions." (*Id*.) When Ms. Dillard refused to return the settlement money, "the county Political Defendants trumped up a raft of specious accusations, and caused a criminal prosecution to be commenced against both Dillard and Daniels." (*Id*.) Defendants "peddled" "false allegations" to the District Attorney's Office and Ms. Dillard and Mr. Daniels were charged with having violated federal regulations by "drawing down and distributing federal Department of Health and Human Services ("DHHS") funds." (*Id*. at ¶ 16.) The criminal complaint also charged Ms. Dillard with "enrich[ing] herself by utilizing ACAP resources, and [] creat[ing] two backdated documents immediately following her dismissal as executive director of ACAP." (*Id*.) Mr. Daniels was only charged "to place pressure on Dillard to enter a plea bargain" and she was promised that if she entered a plea, the charges against Mr. Daniels would be reduced to a misdemeanor. (*Id*. at ¶ 17.) A deputy district attorney also advised Mr. Daniels and Ms. Dillard's defense counsel that although "the prosecutors were disinclined to bring the action of highly dubious merit," they did so because of "intense political pressure from the County Board of Supervisors." (*Id*.) Plaintiffs also subsequently discovered that the County was pursuing an insurance claim that the carrier would only pay if Mr. Daniels or Ms. Dillard was convicted of a crime. (*Id*.)

Mr. Daniels and Ms. Dillard "refused to buckle under pressure" and the case against them proceeded to trial. (*Id*. at ¶ 18.) The trial lasted over four months during which time "Defendants drummed up publicity, and Dillard and Daniels were portrayed in the press and media as crooks." (*Id*.) The cost of attorney's fees "was crushing" and led to Ms. Dillard and Mr. Daniels losing their home in foreclosure. (*Id*. at ¶ 19.) Mr. Daniels and Ms. Dillard were eventually convicted of some of the charges and acquitted of others. (*Id*. at ¶ 20.) In particular, they were both convicted

3

1 of improper "draw-down" of federal funds and Ms. Dillard was also convicted of creating two
2 post-dated documents that she intended to use in unspecified legal proceedings. (*Id*.) Neither Mr.
3 Daniels nor Ms. Dillard received any custody time; instead, the judge ordered them to pay over
4 $300,000 in restitution. (*Id*. at ¶ 21.) "The restitution order was based upon the mistaken belief
5 that Dillard and Daniels owed this sum to the federal Department of Health and Human Services."
6 (*Id*.)

Mr. Daniels and Ms. Dillard appealed their convictions; however, this process took over four years and during this time they paid appellate counsel $100,000 which left them "destitute" and "virtually unemployable." (*Id*. at ¶ 22.) On March 29, 2018, the First District Court of Appeal issued an opinion finding that "Alameda County had violated the Supremacy Clause of the United States Constitution by fashioning state law crimes out of violations of non-penal federal regulations, when the federal agency charged with administering the regulations did not deem Daniels' and Dillards' conduct culpable." (*Id*. at ¶ 24.) As a result, Mr. Daniels "was fully exonerated on the merits" and Ms. Dillard was "left with only a single count of conviction, for creating two back-dated documents." (*Id*.)

The Alameda County Superior Court subsequently granted Mr. Daniels' and Ms. Dillard's request to dismiss all charges, terminate their probation, and expunge their criminal records. (*Id*. at ¶ 25.) Both Mr. Daniels and Ms. Dillard nonetheless continue to struggle for employment. (*Id*. at ¶ 26.) Ms. Dillard now works for a tour company making $47,000 a year. (*Id*.)

**B. Procedural Background**

Nearly ten months after the Court of Appeal's decision, Mr. Daniels and Ms. Dillard filed this action against Alameda County; the Alameda County Board of Supervisors; Nate Miley, Keith Carson, Scott Haggerty, Wilma Chan, all members of the Alameda County Board of Supervisors; Susan Muranishi, the Alameda County Administrator; Robert Lieber, the former mayor of Albany and a former member of the ACAP Governing Board; Diana Souza, a former San Leandro City Council member and former member of the ACAP Governing Board, the Alameda County Auditor-Controller Agency, and Patrick O'Connell, the former Alameda County Auditor-Controller. (Dkt. No. 1.) Plaintiffs plead four claims for relief: (1) malicious/retaliatory

prosecution in violation of 42 U.S.C. § 1983; (2) malicious prosecution under California common law; (3) violation of the Bane Act, Cal. Civ. Code § 52.1; and (4) California common law intentional infliction of emotional distress.

Defendants Alameda County, Alameda County Board of Supervisors, Keith Carson, Wilma Chan, Scott Haggerty, Nate Miley, Susan Muranishi, Patrick J O'Connell, and Richard Valle (hereafter "Defendants") subsequently filed the now pending motion to dismiss and to strike the state law claims under California Code of Civil Procedure § 425.16, the anti-Strategic Lawsuits Against Public Participation (anti-SLAPP) statute. (Dkt. No. 15.) Defendants Diana Souza and Robert Lieber separately moved to dismiss and Plaintiffs thereafter voluntarily dismissed their claims against both of these defendants. (Dkt. Nos. 17, 21, 25 & 27.)

**DISCUSSION**

Defendants move to dismiss Plaintiffs' claims on multiple grounds. As a threshold matter, they insist that Plaintiffs' complaint fails to state a claim upon which relief can be granted because Plaintiffs have not sufficiently alleged that any defendant caused the criminal prosecution, and, even if they could so allege, given their conviction following a jury trial Plaintiffs cannot show as a matter of law that probable cause was lacking for their prosecution. In the alternative, Defendants insist that Plaintiffs' Section 1983 claim is time-barred, that Defendants are entitled to qualified immunity, and that there is no basis for municipal liability against the County or the Board of Supervisors. In addition, Defendants maintain that Plaintiffs' state law claims fail on other grounds and that they must be struck under the California anti-SLAPP statute.

**A. Section 1983 Malicious and/or Retaliatory Prosecution Claim**

Plaintiffs allege that "Defendants caused Dillard and Daniels to be prosecuted in retribution for exercising their First Amendment Rights." (Complaint at ¶ 30.) It is unclear whether Plaintiffs' claims are predicated on a malicious prosecution theory or a retaliatory prosecution theory or both. To prevail on a section 1983 malicious prosecution claim a plaintiff must prove that criminal proceedings were instituted with malice, without probable cause, and for the purpose of denying the plaintiff a specific constitutional right. *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995). The claim "requires 'the institution of criminal proceedings

5

against another who is not guilty of the offense charged' and that 'the proceedings have terminated in favor of the accused.'" *Lacey v. Maricopa Cty.*, 693 F.3d 896, 919 (9th Cir. 2012) (quoting Restatement (Second) of Torts § 653 (1977)). A Section 1983 retaliatory prosecution claim requires a showing of a "'retaliatory motive on the part of an official urging prosecution combined with an absence of probable cause supporting the prosecutor's decision.'" *Beck v. City of Upland*, 527 F.3d 853, 865 (9th Cir. 2008) (quoting *Hartman v. Moore*, 547 U.S. 250, 265 (2006)).

Defendants insist that Plaintiffs' claims predicated on either a malicious prosecution or retaliatory prosecution theory fail because: (1) Plaintiffs have not alleged facts that plausibly suggest than any defendant, let alone all of the defendants, caused the District Attorney to bring charges against them in retaliation for the exercise of their First Amendment rights or for other reasons, and (2) the underlying criminal charges were supported by probable cause as a matter of law.

### 1) Allegations Tying Defendants to the Prosecution

Whether Plaintiffs bring a retaliatory prosecution claim or a malicious prosecution claim, Plaintiffs must tie the claim to each defendant's conduct. In particular, Plaintiffs must allege facts that support a plausible inference that each defendant "improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004); *see also Beck*, 527 F.3d at 865 (holding that a retaliatory prosecution claim requires a showing of a "retaliatory motive on the part of an official urging prosecution combined with an absence of probable cause supporting the prosecutor's decision").

Here, Plaintiffs allege that following the settlement of the Brown Act claim, "Defendants trumped up a raft of specious accusations, and caused a criminal prosecution to be commenced against both Dillard and Daniels," that the District Attorney prosecuting the case was "proceeding under intense political pressure from the Board of Supervisors," and that during the trial "Defendants drummed up publicity, and Dillard and Daniels were portrayed in the press and media as crooks." (Complaint at ¶¶ 15, 17, 28.) These allegations are insufficient to show that

6

1  Defendants—of whom there are 7 individuals in addition to the County and Board of
2  Supervisors—caused the District Attorney to bring criminal charges against Plaintiffs.
3  First, "[w]here a complaint pleads facts that are merely consistent with a defendant's
4  liability, it stops short of the line between possibility and plausibility of entitlement to relief."
5  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff
6  pleads factual content that allows the court to draw the reasonable inference that the defendant is
7  liable for the misconduct alleged."); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)
8  ("Factual allegations must be enough to raise a right to relief above the speculative level.").
9  Plaintiffs have not alleged any facts—as opposed to conclusions--that support a plausible
10 inference that Defendants were responsible for the prosecution. Second, Plaintiffs improperly
11 group all of the defendants together and do not include allegations specific to each defendant to
12 support a plausible inference of each defendant's liability. *See Leer v. Murphy*, 844 F.2d 628, 633
13 (9th Cir. 1988); *see also Gressett v. Contra Costa Cty.*, No. C-12-3798 EMC, 2013 WL 2156278,
14 at *15 (N.D. Cal. May 17, 2013) (the plaintiff must "please sufficient facts to hold each Individual
15 Defendant liable for malicious prosecution").

16 To the extent Plaintiffs seek to supplement their allegations through the declarations
17 submitted with their opposition brief, at the motion to dismiss stage the Court cannot consider
18 evidence outside the pleadings without converting the motion into a summary judgment motion.
19 *See Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1021 (C.D. Cal. 2015) ("Courts
20 regularly decline to consider declarations and exhibits submitted in ... opposition to a motion to
21 dismiss ... if they constitute evidence not referenced in the complaint or not a proper subject of
22 judicial notice."). Further, Plaintiffs' insistence that the Court cannot dismiss this claim without
23 allowing discovery because it involves information under Defendants' control is misplaced. "The
24 *Twombly* plausibility standard ... does not prevent a plaintiff from pleading facts alleged upon
25 information and belief where the facts are peculiarly within the possession and control of the
26 defendant or where the belief is based on factual information that makes the inference of
27 culpability plausible." *Park v. Thompson*, 851 F.3d 910, 928-29 (9th Cir. 2017) (quoting *Arista
28 Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)); *see also Menzel v. Scholastic, Inc.*, No.

17-CV-05499-EMC, 2018 WL 1400386, at *3 (N.D. Cal. Mar. 19, 2018) (noting that even where the evidence is within the defendant's control, plaintiff still must allege specific facts which on information and belief make the inference of culpability plausible). Plaintiffs' conclusory allegations fail to support a plausible inference that any particular defendant was instrumental in or actively encouraged Plaintiffs' prosecution. The motion to dismiss must be granted must be granted for this reason alone.

### 2) Probable Cause

"[A] plaintiff alleging a retaliatory prosecution must show the absence of probable cause for the underlying criminal charge. If there was probable cause, the case ends." *Lozman v. City of Riviera Beach, Fla.*, 138 S. Ct. 1945, 1952 (2018) (citing *Hartman v. Moore*, 547 U.S. 250, 265-66 (2006)); *see also Nieves v. Bartlett*, 139 S. Ct. 1715, 1726 (2019) ("It has long been "settled law" that retaliatory prosecution requires proving "the want of probable cause"). The same probable cause analysis applies to a section 1983 malicious prosecution claim. *See Awabdy*, 368 F.3d 1062, 1066 (9th Cir. 2004) ("to prevail on a § 1983 claim of malicious prosecution, a plaintiff 'must show that the defendants prosecuted [him] with malice and without probable cause...'" (citation omitted)).

Defendants argue that Plaintiffs cannot satisfy the absence of probable cause element as a matter of law because they were required to go to trial on all charges and were convicted of certain offenses. "[W]e look to California law to determine the legal effect of the state court's action because we have incorporated the relevant elements of the common law tort of malicious prosecution into our analysis under § 1983." *Awabdy*, 368 F.3d at 1066. "In California, as in virtually every other jurisdiction, it is a long-standing principle of common law that a decision by a judge or magistrate to hold a defendant to answer after a preliminary hearing constitutes prima facie—but not conclusive—evidence of probable cause." *Id*. at 1067 (collecting cases). A plaintiff can rebut a "finding of probable cause [] by showing that the criminal prosecution was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith." *Id*. Where, however, "a trier of fact after a fair adversary hearing reach[ed] a determination on the merits against the defendant in the prior proceeding" there is a "conclusive

8

presumption of probable cause" and "the defendant in that proceeding may not thereafter institute an action for malicious prosecution, whether the matter was criminal or civil, even though he shows that the determination in question was reversed on appeal or set aside by the trial judge." *Cowles v. Carter*, 115 Cal. App. 3d 350, 358 (1981); *see also Norton v. John M.C. Marble Co.*, 30 Cal.App.2d 451, 454-55 (1939) (holding that a conviction establishes probable cause). The only exception to this conclusive presumption is where the conviction is obtained by means of fraud or perjury. *Cowles*, 115 Cal. App. 3d at 358; *see also Plumley v. Mockett*, 164 Cal. App. 4th 1031, 1053 (2008) (collecting cases re: the same); Rest.2d Torts, § 667(1) ["The conviction of the accused by a magistrate or trial court, although reversed by an appellate tribunal, conclusively establishes the existence of probable cause, unless the conviction was obtained by fraud, perjury or other corrupt means"].).

### a) Probable Cause for the Convicted Counts

Plaintiffs' convictions for theft by false pretenses and making a false account of public moneys, and Ms. Dillard's additional conviction of preparing false documentary evidence conclusively establish probable cause. *See Plumley*, 164 Cal. App. 4th at 1053 ("[V]ictory at trial . . . conclusively establishes probable cause to bring the underlying action"); *see also Cowles*, 115 Cal. App. 3d at 358; *Norton*, 30 Cal. App. 2d at 454-55. Plaintiffs do not allege that their convictions were obtained through fraud or perjury, nor do they suggest that they can so allege; instead, relying on the Ninth Circuit's decision in *Awabdy* and the United States Supreme Court's decision in *Hartman* they argue that probable cause is not established merely because an individual is "held to answer." Plaintiffs' reliance on these cases is misplaced as neither involves a conviction.

In *Awabdy*, the plaintiff was charged with embezzlement and held to answer following a preliminary hearing. Before the plaintiff was tried, the district attorney dismissed the charges in the interests of justice. The plaintiff subsequently sued for malicious prosecution. The district court dismissed the complaint on the grounds that the trial court's decision to require the plaintiff to answer the charges following a preliminary hearing conclusively established probable cause and therefore the plaintiff could not prove the absence of probable cause. The Ninth Circuit reversed,

concluding that the plaintiff being held to answer after preliminary hearing was only *prima facie* proof of probable cause and thus would "not prevent him from maintaining his § 1983 malicious prosecution claim if he is able to prove the allegations in his complaint that the criminal proceedings were initiated on the basis of the defendants' intentional and knowingly false accusations and other malicious conduct." *Awabdy*, 368 F.3d at 1066. Likewise, in *Hartman*, which was decided two years later, the charges against the plaintiff were dismissed at the close of the government's case based on a "'complete lack of direct evidence' connecting the defendants to any of the criminal wrongdoing alleged." *Hartman*, 547 U.S. at 254. Here, in contrast, Plaintiffs were *convicted* of three of the counts on which they were charged. Under California law, their convictions conclusively establish the existence of probable cause for the prosecution for theft by false pretenses and making a false account of public moneys, and Ms. Dillard's additional charge of preparing false documentary evidence. *See Plumley*, 164 Cal. App. 4th at 1053; *Cowles*, 115 Cal. App. 3d at 358; *Norton*, 30 Cal. App. 2d at 454-55.

That Mr. Daniels' convictions on both the counts on which he was convicted and Ms. Dillard's convictions on two of three counts on which she was convicted were reversed on appeal does not undermine the conclusive existence of probable cause. The rule under California law is that "a victory at trial, ***though reversed on appeal***, conclusively establishes probable cause to bring the underlying action." *Plumley,* 164 Cal. App. 4th at 1052 (referring to the principle as the "'interim adverse judgment' rule") (emphasis added). "'The rationale is that approval by the trier of fact, after a full adversary hearing, sufficiently demonstrates that an action was legally tenable.'" *Id.* (quoting *Cowles*, 115 Cal. App. 3d at 358). "To put it differently, success at trial shows that the suit was not among the least meritorious of meritless suits, those which are totally meritless and thus lack probable cause." *Id.* (internal quotation marks and citation omitted); *see also Cowles*, 115 Cal. App. 3d at 355 (1981) ("In the event the plaintiff in the prior action obtains judgment after trial, such judgment is, unless procured by fraud, conclusive proof that the proceedings were prosecuted with probable cause, ***notwithstanding the fact that the judgment is reversed on appeal***.") (emphasis added); *Norton*, 30 Cal. App. 2d at 454 ("a final judgment duly rendered after trial on the merits, in a court having complete jurisdiction, adverse to the defendant

10

in the proceedings in which the judgment is rendered, is, unless procured by fraud which may be either extrinsic or intrinsic, conclusive proof that the proceedings were prosecuted with probable cause, ***notwithstanding the fact that the judgment is reversed on appeal***.") (emphasis added). Plaintiffs' urging that a reversal based on federal preemption should eliminate the conclusive presumption of probable cause is not supported by any law—statutory, common, or other.

Plaintiffs' suggestion that *Hartman* rejected the notion that state law probable cause requirements should be imported into section 1983 retaliatory prosecution claims is unpersuasive. *Hartman* did not so hold—and Plaintiffs can point to no case interpreting it in that manner. Instead, *Hartman* emphasized the importance of the probable cause requirement: "Because showing an absence of probable cause will have high probative force, and can be made mandatory with little or no added cost, it makes sense to require such a showing as an element of a plaintiff's case, and we hold that it must be pleaded and proven." 547 U.S. at 265-66. Similarly, *Nieves v. Bartlett*, 139 S.Ct. 1715 (2019), also did not hold that probable cause for a retaliatory prosecution section 1983 claim is determined by federal common law rather than state law. In any event, Plaintiffs have not cited any federal common law, or any state's law for that matter, that is contrary to California's probable cause rules.

Plaintiffs' contention that *Heck v. Humphrey,* 512 U.S. 477 (1994), holds that reversal on direct appeal negates probable cause for purposes of a section 1983 action is equally unavailing. *Heck* bars suits "based on theories that 'necessarily imply the invalidity of [the plaintiff's] convictions or sentences.'" *Cunningham v. Gates*, 312 F.3d 1148, 1153-54 (9th Cir. 2003) (as amended) (quoting *Heck*, 512 U.S. at 487). If success on the section 1983 claim would imply the invalidity of the conviction or sentence, then the plaintiff cannot proceed with the claim unless and until "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Heck*, 512 U.S. at 486–87 (1994). *Heck* did not address whether a subsequently overturned conviction defeats a finding of a probable cause.

Finally, *Nieves* did not recognize an exception to the no-probable cause rule for retaliatory-

prosecution section 1983 cases. To the contrary, *Nieves* adopted the no-probable cause rule from retaliatory prosecution cases into retaliatory-arrest cases, with one narrow exception. 139 S.Ct. at 1725, 1727. As this is not a retaliatory-arrest case, *Nieves* does not apply.

Accordingly, Plaintiffs' convictions for theft by false pretenses and making a false account of public monies, and Ms. Dillard's additional conviction of preparing false documentary evidence preclude them from establishing a lack of probable cause for these counts and Plaintiffs' Section 1983 claim based on these charges—whether predicated on a malicious prosecution or retaliatory conviction theory—must be dismissed. As explained above, the only exception to the conclusive presumption of probable cause is if Plaintiffs can plead and prove that their convictions were obtained by fraud. There is nothing in the Court of Appeals decision that would even remotely support such allegations. Nonetheless, the Court will grant Plaintiffs leave to amend to so allege, but only if such allegations can be made consistent with Federal Rule of Civil Procedure 11.

### b) Probable Cause for Acquitted Counts

Plaintiffs next argue that even if they cannot prove an absence of probable cause for those counts on which they were convicted, any presumption of probable cause is rebuttable for those counts on which they were acquitted. "In California, as in virtually every other jurisdiction, it is a long-standing principle of common law that a decision by a judge or magistrate to hold a defendant to answer after a preliminary hearing constitutes prima facie—but not conclusive—evidence of probable cause." *Awabdy*, 368 F.3d at 1067 (collecting cases re: same). "[A] plaintiff can rebut a prima facie finding of probable cause by showing that the criminal prosecution was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith." *Id*. Plaintiffs' complaint fails to allege specific facts which plausibly support an inference that the criminal prosecution on the counts for which they were held over but acquitted was "induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith." Plaintiffs' suggestion that the "retaliatory motive" itself is the wrongful conduct does not make sense. As *Hartman* noted, "a retaliatory motive on the part of an official urging prosecution ***combined with*** an absence of probable cause supporting the prosecutor's decision to go forward are reasonable grounds to suspend the presumption of regularity behind the

charging decision." 547 U.S. at 265. Under Plaintiffs' theory, the retaliatory motive itself would be sufficient, a theory *Hartman* expressly rejected. Accordingly, Plaintiffs will be granted leave to amend to the extent that they can makes factual allegations that plausibly rebut the prima facie showing of probable cause as to those counts on which they were acquitted.

### 3) Other Section 1983 Arguments

As the Court is dismissing Plaintiffs' Section 1983 Claim in its entirety for the reasons explained above, it declines to address Defendants' additional arguments at this time.

## B. Plaintiffs' State Law Claims

In addition to their Section 1983 claim, Plaintiffs plead state law claims for malicious prosecution, violation of the Bane Act, Cal. Civ. Code § 52.1, and intentional infliction of emotional distress. The Court declines to address these claims until it determines if the federal claim, which gives rise this Court's subject matter jurisdiction, can proceed past the pleading stage. *See United Mine Works v. Gibbs*, 383 U.S. 715, 726 (1966).

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED as to Plaintiffs' Section 1983 claim with leave to amend. The Court denies the motion to dismiss the state law claims without prejudice to the motion being renewed as to the state law claims in a subsequent motion to dismiss.

Plaintiffs shall file their amended complaint, if any, within 30 days of this Order.

This Order disposes of Docket No. 28.

**IT IS SO ORDERED.**

Dated: July 10, 2019

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge

13